# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 98 C 5961 | DATE | 1/18/2001 |
| CASE TITLE | MICHAEL TOLIVER vs. JERRY D. GILMORE | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum and Order. Toliver's Writ for Habeas Corpus is denied.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | JAN 19 2001 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | 34 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES ex. rel., MICHAEL TOLIVER, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 98 C 5961 |
| JERRY D. GILMORE, | ) ) | Judge John W. Darrah |
| Respondent. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner, Michael Toliver (Toliver), seeks a writ of habeas corpus against Pontiac Correctional Center Warden, Jerry D. Gilmore, pursuant to 28 U.S.C. § 2254. Following a jury trial, Toliver was convicted of one count of home invasion and three counts of aggravated criminal sexual assault. The trial court sentenced Toliver to consecutive terms totaling 45 years of imprisonment. Toliver filed his writ of habeas corpus on November 2, 1998, raising several grounds for relief: (1) ineffective assistance of trial counsel for (a) failing to suppress in-court and out-of-out identification of the defendant by the victim; (b) failing to suppress photographs of defendant and subsequent identification of defendant based on the photographs; (c) stipulating that a lab report showed test results that were consistent with defendant being the donor; (d) failing to object to the State's argument concerning lab results, (2) ineffective assistance of appellate counsel for (a) failing to raise a claim of ineffective assistance of trial counsel regarding the identification procedures; (b) refusing to argue error in the identification procedure and to file defendant's pro se brief making such argument; (c) failing to appeal the trial counsel's stipulation of the lab report; (d) failing to appeal trial counsel's failure to object to the State's argument concerning the lab results, and (3) the State's

34

use of perjured testimony.

## I. BACKGROUND

The factual findings of a state trial or appellate court are presumed true in a federal habeas proceeding unless the petitioner can rebut the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The petitioner has not challenged the appellate court's summary of facts. Accordingly, the following facts are drawn from the appellate court's opinions.

On May 25, 1991, Jody D. (Jody) was sexually assaulted in her home by a black male, 175 to 180 pounds, who wore blue jeans and a green cap. Jody was shown at least two photographic arrays. Jody could not identify the defendant from the first array; she did identify the defendant in a later array that contained a more current photograph of the defendant. The parties stipulated that William Wilson, a forensic chemist, would testify that he performed tests in which the vaginal swab taken from Jody contained seminal fluid which was consistent with defendant's blood type and inconsistent with Jody's blood type. He would further testify that he detected the possible presence of saliva on the vaginal swab and that he received a band-aid and cigarette butt but did not perform any tests on these two items. Toliver presented alibi witnesses that testified that he was at his mother's home the day and time of Jody's assault. A jury found Toliver guilty of home invasion and three counts of aggravated criminal sexual assault. The trial court sentenced Toliver to consecutive sentences totaling 45 years' imprisonment.

On direct appeal, Toliver challenged only his sentence. On November 10, 1993, the Second District Appellate Court of Illinois (Appellate Court) affirmed Toliver's convictions, vacated his sentences, and remanded with directions for the trial court to impose new sentences. *People v. Toliver*, 251 Ill. App. 3d 1092, 623 N.E.2d 880 (1993). The trial court subsequently resentenced

2

Toliver to sentences totaling 45 years' imprisonment. Toliver appealed the new sentence and the Appellate Court affirmed. *People v. Toliver*, No. 2-94-0554, Feb. 2, 1996 (Rule 23 Order).

While Toliver's first appeal was pending, he filed his first petition for post-conviction relief claiming: (1) he was denied effective assistance of trial counsel and appellate counsel; (2) he was denied his right to confront witnesses when the prosecutor became a witness against him; (3) the State made fraudulent representations in a stipulation received into evidence; and (4) the State used perjured testimony. The trial court found Toliver's claims were patently without merit because: (1) the documents provided by the petitioner showed that the trial and appellate counsel adhered to an objective standard of professionalism; (2) the prosecutor did not, in effect become a witness against the petitioner; (3) the parties and the attorneys stipulated to the blood test lab report; and (4) the petitioner's characterization of inconsistencies and omissions in testimony as 'perjury' had no factual support in the documents submitted by the petitioner. ( No. 91 CF 1182, Oct. 14, 1992). Toliver appealed the trial court's finding to the Appellate Court. Appellate counsel for the appeal of the denial of his first post-conviction petition moved to withdraw as counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). The Appellate Court granted appellate counsel's motion to withdraw and affirmed the judgment of the trial court. *People v. Toliver*, No. 2-93-0137 (Rule 23 order).

On December 6, 1995, Toliver filed a second post-conviction relief, alleging he was denied effective assistance of trial and appellate counsel, and that he was denied the statutory right to effective counsel in the post-conviction appeal. The trial court found Toliver's second post-conviction petition frivolous and patently without merit. It found that except for Toliver's claim of ineffective of appellate counsel in relation to his appeal of the denial of his first post-conviction petition, all of his claims were raised or could have been raised on direct appeal or in the first post-

conviction petition. (Case No. 91 CF 1182). Toliver subsequently appealed the denial of his second post-conviction petition, and the Appellate Court affirmed the trial court's judgment. (*People v. Toliver*, 2-96-0065, Apr. 22, 1997 (Rule 23 Order). Toliver filed a petition for leave to appeal with the Illinois Supreme Court, which was denied on October 1, 1997. *People v. Toliver*, 686 N.E.2d 1171 (1997) (Table).

## II. ANALYSIS

A federal court will not grant habeas corpus relief on any claim adjudicated on the merits by a state court unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). For relief based on an unreasonable application of Supreme Court doctrine, the state court's decision must be both unreasonable and incorrect. *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000). A decision is reasonable if it is at least minimally consistent with the circumstances and facts of the case and this Court will uphold the state court ruling even if it is not well or fully reasoned or is one of several equally plausible outcomes. *Schaff v. Snyder*, 190 F.3d 513, 523 (7th Cir. 1999).

1) Ineffective Assistance of Trial Counsel

The assessment of the performance of either trial or appellate counsel is based on the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) (*Strickland*), which requires the petitioner establish that his counsel's performance was deficient, meaning that it fell below objective standards for reasonable effective representation. *Strickland*, 466 U.S. at 687-88. The petitioner must also demonstrate that the deficient performance prejudiced his defense, meaning that but for

the deficient representation, the result of the trial would have been different. *Strickland*, 466 U.S. at 694. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and the petitioner must overcome the presumption that under the circumstances of the case, the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689. In the instant case, the Appellate Court found that Toliver's counsel adhered to an objective standard of professionalism.

a and b) Failure to Suppress In-Court and Out-Of-Court Identification and Photographs of Defendant

Toliver argues that his trial counsel was ineffective for failing to suppress the in-court and out-of-court identification of the petitioner by the victim and the admission of the photographs used in the out-of-court identification. He alleges the identifications and the photographs should have been suppressed because the identification procedure was suggestive.

On May 26, 1991, the day after the assault, Sargent Hendley interviewed Jody and showed her books of photographs in an attempt to have her identify her assailant; Jody made no identification. That same day, Jody's boyfriend telephoned Sargent Hendley and informed him that based on information he received from Jody and personal knowledge, someone who goes by the name "Black Mike" may have been the offender. Based on the information the petitioner became a suspect.

On May 28, 1991, Sargent Hendley showed Jody six photographs including an old photograph of the petitioner. At trial, Jody testified that she did not make an identification based on the May 28th photographs. Jody also testified that she informed Sargent Hendley, for the first time, that her assailant had a gold tooth. Sargent Hendley testified that Jody made a "looks like" identification of the photograph of the petitioner as her assailant. At some time later, Sargent

Hendley informed Jody that the photograph of Toliver was an old photograph.

On June 1, 1991, Sargent Hendley picked up the petitioner and brought him to the police station for questioning and photographs, including one smiling and one not smiling. The new photographs and the five photographs that were previously used were used in another attempt to have Jody identify her assailant. Jody identified the new photograph of Toliver as her assailant. At trial, Jody testified that she was only shown one of the two photographs of Toliver and that she was not sure if the other five photographs were the same photographs used in the previous viewing. Sargent Hendley testified that he showed Jody both new photographs of Toliver and that she did not hesitate when she identified Toliver based on one of the photographs. At trial, Jody made an in-court identification of Toliver as her assailant.

A two-step test is used for evaluating a challenge to identification testimony. A defendant must first establish that the identification procedure that was used was unreasonably suggestive. Second, the court must determine whether the identification, when viewed under the totality of the circumstances, is reliable despite the suggestive identification procedures. *United States v. Galati*, 230 F.3d 254, 259 (7th Cir. 2000). Factors included in the second analysis include: the opportunity of the witness to view the criminal at the time of the crime; the witness's degree of attention at the time of the crime; the accuracy of the witness's pre-identification description of the criminal; the level of certainty demonstrated by the witness at the time of the identification; and the length of time between the identification and the crime. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1977) (*Biggers*).

Here, the evidence establishes that Jody's first positive photo-array identification of Toliver was during a subsequent photo-array in which an updated photograph of Toliver was the only variable changed from the previous photo-array. Based on only changing the photo-array in relation

to Toliver, the photo-array could be considered unreasonably suggestive. However, even if the Court found that the photo-array was unreasonably suggestive, the identification was reliable under the totality of the circumstances. The assault took place over a 1 to 2 hour period giving Jody ample opportunity to view her assailant; Jody's testimony demonstrates a large degree of attention to the events surrounding the assault; Jody gave a general description that matches the petitioner before viewing any photographs; upon viewing a recent photograph of Toliver, Jody identified him as her assailant without hesitation; and the identification of Toliver was made within a couple days of the assault. Consequently, Toliver cannot demonstrate any prejudice from the trial counsel's failure to suppress the photo-array identification and the admission of the photographs into evidence.

Toliver also argues the photograph identification tainted the in-court identification as well, because while on the stand, Jody identified him from the photo-array prior to being asked to identify him in court. An in-court identification that follows an unreasonably suggestive pre-trial identification is admissible if, under the totality of the circumstances, the in-court identification was reliable. *Cossel v. Miller*, 229 F.3d 649, 655 (7th Cir. 2000) (*Cossel*). The same "*Biggers* factors" described above are used to determine whether the in-court identification was reliable. *Cossel*, 229 F.3d at 655. As found above, the *Biggers* factors establish that Jody's in-court identification was reliable, and Toliver cannot establish any prejudice from the in-court identification and his ineffective assistance of counsel argument fails.

c) Stipulated Lab Report

Toliver also argues that trial counsel's stipulation to a lab report that found consistency between the secretions found in the vaginal swab and Toliver's blood type demonstrates ineffective assistance of counsel because by stipulating to the lab report counsel could not challenge the results

7

of the lab report. Toliver's petition specifically states that the forensic chemist, William Wilson, should have been called "to establish the possibility of contamination of the vaginal swab." Toliver presents no evidence that anything contained within the lab report was incorrect, inadmissible, or was that the vaginal swab was contaminated. Therefore, Toliver cannot show that he was prejudiced by counsel's stipulation and his claim of ineffective assistance of counsel fails.

d) Failure to Object to the State's Closing Argument Concerning the Lab Results

Toliver argues that his trial counsel was ineffective for failing to object to arguments made by the prosecutor. Toliver alleges that the prosecutor's use of the term "match" when discussing the lab results, and her argument that further testing on items that had not been tested would confirm the "match" constituted error. The State is free to invite the jury to draw inferences from the evidence presented to a jury. See *Rodriguez v. Scillia*, 193 F.3d 913, 919 (7th Cir. 1999) (*Rodriguez*).

During rebuttal closing argument, the prosecutor stated:

> He also told you that you don't have any scientific evidence connecting the defendant. You do.... You have the blood type in the secretion. The reason that there was no test done by Mr. Wilson on the band aid or on the cigarette butt [items found in the victim's home that did not belong to the victim] is all that would do is confirm what we already know. That's not going to tell you exactly it's the defendant. That test doesn't do that. All that it would say again is if the secretions are consistent with him and not with her. We already had a match, we didn't need another one. Would it have been nice for Mr. Wilson to do that? Maybe. It would have been more evidence. It's not necessary. We already had a match. It would be further proof of the same thing, and that's not necessary.

Toliver's disagreement with the prosecutor's use of the term "match" is meritless. The lab report showed that Toliver's blood type and the secretion found on the vaginal smear were the same, constituting a "match". Furthermore, the prosecutor's argument concerning the need not to test other

materials, placed in qualifying context, were not sufficiently outrageous to affect the outcome of the trial given the totality of the evidence, and he cannot demonstrate prejudice. See *Rodriguez*, 193 F.3d at 920.

2) Ineffective Assistance of Appellate Counsel

Toliver argues that appellate counsel was ineffective because it failed to raise claims of ineffective assistance of counsel in relation to the arguments set forth above and refusing to file his pro se brief that argued the trial court erred in allowing the identification evidence. Ineffective assistance of appellate counsel is reviewed under the *Strickland* standard discussed above. Appellate counsel does not have a constitutional duty to raise issues requested by the client if counsel believes the claims lack merit. See *Jones v. Barnes*, 463 U.S. 745 (1983). Toliver is unable to demonstrate that his appellate counsel's performance fell below objective standards for reasonable representation or that he was prejudiced by appellate counsel's actions because, as discussed above, the results of any appeal would not have rendered different results.

3) Perjured Testimony

Toliver next argues that Sargent Hendley provided false testimony concerning the photo-array and Jody's identification of Toliver as her assailant. This argument is without merit. The petitioner offers no proof that Sargent Hendley lied while testifying, instead, he relies on differences between the testimony of Sargent Hendley and Jody in relation to the photo-array. Differences in the testimony of Sargent Hendley and Jody goes to the credibility of the witnesses and it is not within this Court's province to second-guess the credibility determinations made by the fact finder. See *Ford v. Ahitow*, 104 F.3d 926, 939 (7th Cir. 1997).

4) Actual Innocence

Last, Toliver argues that he is actually innocent and invokes the rule of *Schlup v. Delo*, 513 U.S. 298 (1995) to excuse any procedural default due to a miscarriage of justice. Respondent did not argue, and this Court did not find, Toliver's arguments were procedurally defaulted; therefore, the rule of *Schlup* does not apply.

### III. CONCLUSION

For the reasons herein, Toliver's Writ for Habeas Corpus is denied.

Dated: January 18, 2001

JOHN W. DARRAH
United States District Judge